BEATTIE, (UNITED STATES v.) See Case No. 14,554.

BEATTY, Ex parte. See Case No. 9,976.

## Case No. 1,196.

### In re BEATTY et al.

[3 Ben. 233;[1] 2 N. B. R. 582, (Quarto, 177;) 1 Chi. Leg. News, 326.]

District Court, S. D. New York. May 8, 1869.

BANKRUPTCY—DISCHARGE—LOSSES IN SPECULATION.

Where bankrupts appeared to have lost, in twenty-one months, a capital of $120,000, and were left with debts to the amount of $200,000, and it appeared that they had trusted their business almost exclusively to an uncle, in whom they had confidence, and who was able to make them believe that they were making large profits in buying and selling ships, and who, by this means, cheated them, leaving them with a claim against him of $640,000, on which nothing could be realized: *Held*, that, on all the facts, it sufficiently appeared that the bankrupts had not been in any complicity with their uncle, in defrauding their creditors, but had been themselves defrauded, and that discharges would be granted to them.

[Cited in Re Antisdel, Case No. 490.]

[In bankruptcy. Petition by Robert W. Beatty, John C. Beatty, and George R. Beatty, bankrupts, for discharges. Granted.]

James Emott, C. A. Seward, and Converse & Lyman, for bankrupts.

G. M. Speir and C. E. Pratt, for opposing creditors.

BLATCHFORD, District Judge. I have examined, with care, the voluminous testimony and exhibits in this case, with the assistance of the briefs furnished by the respective counsel. The bankrupts have, in my judgment, made a full and correct exhibition of all their dealings, and, although their books, as kept by them during the time they were in business, which was before the passage of the bankruptcy act, [14 Stat. 517,] were not kept in the form which the most correct system of book-keeping would sanction, yet entries are found therein covering, with minuteness of detail, all their transactions, so

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

that those transactions have all been laid bare by reference to the books. I cannot see any evidence of an intention to mislead or deceive any one by the manner in which the books were kept. Their transactions with their uncle, Thomas H. Armstrong, whereby all the capital, $120,000, which they put into their firm, and all the profits they made and realized from their legitimate business of dealing in teas, and all the money they borrowed from other parties, were wasted and lost in the short space of twenty-one months, leaving them insolvent, with an indebtedness due by them of over $200,000, and with scarcely any property, except a claim against Armstrong for over $640,000, sufficiently explain why they were ruined. I see, in these transactions, a haste to be rich by illegitimate means, and a greed of gain, on the side of the bankrupts, which, favored by the relationship of Armstrong to them, led them to trust him with all the money and obligations he asked for, on such representations as he chose to make, without any investigation by them, or any attempt to verify the truth of his statements; and, on the part of Armstrong, one of the most formidable and successful swindles of the time. But I see no complicity in fraud between Armstrong and the bankrupts. Armstrong was engaged all the time, knowingly, in cheating the bankrupts, and they were engaged all the time, negligently, but unknowingly, in aiding him to cheat themselves. The effect of the transactions was to deprive them of all means of paying their creditors; but I see no evidence of any fraud on their part. On the contrary, they were defrauded by Armstrong.

It would seem, on general principles, to be hardly credible, that a swindle of the character of that perpetrated by Armstrong, so transparent in some of its features, could have been carried on through a period of several months, without being detected by persons of ordinary intelligence. But his relationship to the bankrupts, and their terms of intimacy with him, and the fact that they must have thought, if they believed what Armstrong told them, (and everything shows that they did,) that they were making, and not losing, money all the time, account, in a great measure, for what would otherwise seem incredible. It is, indeed, hard to believe that they could have supposed that they had $640,000 worth of ships, with which they were playing as with dice, while, at the same time, they gave no attention to the condition or whereabouts of any of the ships. But this is, perhaps, explainable on the ground, that the ships were, all through, to them a mere matter of purchase and sale, and not at all a matter of employment in traffic. None of them were understood to be held over a few days. Instead of being ships, they might as well have been fancy stocks, or merchandise of any kind. The whole thing, even as the bankrupts viewed it, was a mere gambling transaction, outside of their legitimate business, which they left to be managed by Armstrong. As it existed, in fact, it was a coinage of Armstrong's brain, the bankrupts believing all that he told them, and giving him such moneys and securities as he asked for, to carry out his represented traffic in ships, and receiving from him such moneys as he chose to pay them, and leaving in his hands, invested in the ships, as they supposed, all that he represented to be so invested, and making such entries in their books as corresponded with their dealings with Armstrong, and with his representations as to such investments. It turned out, on the part of the bankrupts, to have been credulity and misplaced confidence, superinduced by the spirit of speculation; but, after all, it differed but little from what, though, perhaps, on a smaller scale, and in different forms, transpires daily, in a community where men are not satisfied with slow and certain gains.

The disposition made by the bankrupts of their tangible property, when they failed on the 1st of April, 1866, was not illegal at the time, nor invalid, nor tainted by fraud. There is nothing to impeach the bona fides of the debts in payment of which such property was appropriated. The charge of willful false swearing by the bankrupts in these proceedings, is not sustained. Nor are any of the specifications supported. Discharges must be granted to all three of the bankrupts.